## THE CITY OF LITCHFIELD
### v.
## SILAS E. WARD.

*Master and Servant—Minor—Municipal Corporations—Contract of Service—Recovery of Wages—Extra Help—Contradictory Instructions.*

1. Although the principles announced in certain instructions are correct, as applied to a proper case, yet where they are not applicable to the case at bar, and are contradictory to other instructions given, and tend to confuse and mislead the jury, the giving of them constitutes reversible error.

2. In an action by a city employe to recover from the municipality compensation for assistance rendered him by his minor son, this court holds that the right of recovery depends upon the amount of steam power furnished a company named, in accordance with a resolution passed by the city council.

[Opinion filed February 14, 1890.]

APPEAL from the County Court of Montgomery County; the Hon. AMOS MILLER, Judge, presiding.

City of Litchfield v. Ward.

Messrs. JOSEPH E. PADEN and JAMES H. TRUITT, for appellant.

Messrs. LANE & COOPER, for appellee.

CONGER, J.   On the 1st day of March, 1888, appellee was employed by appellant, under a written contract, as the engineer of its water-works, and by the terms of such contract he was to run the same for one year from that date for the sum of $1,300, and to furnish all necessary assistance for that purpose.   The same motive power of which appellee had charge, not only drove the water works, but also supplied the power to run the electric lights of the city.   The amount of this power, which the city was required to furnish the Electric Light Company, was 100-horse power, and this was understood by appellee, for he says in his testimony, " I told Beeman that I was doing more work than was expected of me as engineer of the water works; I told him that we were furnishing more than 100-horse power to the Electric Light Company, that being the amount of power which the city was required to furnish the Electric Light Company.

About the 1st of December, 1888, additional machinery and-dynamos for the Electric Light Company were put in, and appellee claimed that the power then furnished the Electric Light Company exceeded 100-horse power, and demanded from Mr. Beeman, who was chairman of the fire and water works committee, additional help.   Appellee and Beeman contradict each other as to what Beeman did in the matter.

Appellee says Beeman promised to report the matter to the city council, and that Beeman told him the next morning after the council met, that he, appellee, could put his son at work to assist him, at fifteen cents per hour.   Beeman says he promised to report the matter to the next council; that he was not present at such meeting, but afterward told appellee that the council had, as he understood, taken some kind of action at the meeting.

On the 6th of December, 1888, at a meeting then held of the city council, the records show the following proceedings ·

" Alderman Thorp and Alderman Keithley stated that the engineer at the water works had asked for additional assistance."

" On motion of Alderman Neuber it was ordered that additional help be allowed him, with the understanding that the cost of such help be paid by the engineer, provided, that it shall be shown by a test, properly made, that the city is now furnishing to the Electric Light Company steam to the amount of more than 100-horse power; then, and in that case, the additional expense for such help shall be borne by the city."

Appellee employed his son, who was a minor, and proved that his labor, at fifteen cents an hour, was worth $94.50, for which sum he obtained a verdict and judgment was rendered thereon.

On the 22d January, 1889, a test was made, in the presence of appellee and some of the aldermen of the city, which showed that the power which was then being furnished the Electric Light Company, was from eighty-one to eighty-six horse power. The court gave to the jury, among others, the following instructions for appellee :

I.    " The court instructs the jury that when work and labor are performed for a party at his request and there is no agreement as to the amount to be paid, then there is in law an implied promise to pay what such work and labor is reasonably worth, and this applies to a corporation as well as an individual."

. II.    " The court instructs the jury that when one person labors for another with his knowledge and consent, and the latter voluntarily takes the benefit of such labor, then the law will presume that the laborer is to be paid for his labor unless the contrary is shown by the evidence ; and if no special contract is provided fixing the price, then the laborer is entitled to have what his services are reasonably worth, and this rule applies to corporations as well as individuals."

And the following for appellant:

II.    " The court instructs the jury that the resolution of the city council offered by the plaintiff, dated December 6, 1888, is the only employment of the plaintiff's son that can be con-

City of Litchfield v. Ward.

sidered in this case, and if the plaintiff went on and used his son in the work, knowing the test made, if you should believe that a test was properly made, showed less than 100-horse power, and made no objection to the city until after or about the time the employment of plaintiff had expired, then the jury will find in favor of the defendant."

These instructions are so directly contradictory that we can not well see how they failed to mislead and confuse the jury.

Appellant was insisting before the jury that they could not rely upon a supposed implied contract or understanding between the parties, but were governed by the resolution of December 6th, and by its second instruction had its view of the law of the case indorsed by the court. Appellee, on the contrary, was insisting that the resolution of the council was not the only evidence of the contract, but that one might be implied to pay a reasonable compensation for labor of which another voluntarily takes the benefit, and had his views given to the jury.

We are inclined to think appellant's second instruction was the law of the case, and those of appellee above quoted should not have been given. The principles announced in them are correct in a proper case, but they were not applicable to the facts of this case.

It is insisted by counsel for appellee in their brief that the resolution of December 6th was a ratification of the act of Mr. Beeman. Admitting, without deciding, that it would have that effect, it would seem to follow that the condition contained in such ratification would be a part of it, and must be met by appellee. But it is said the test could not be made; that it was a condition impossible to be performed, and therefore the resolution was an absolute ratification of the employment claimed to have been authorized by the aldermen. But the test was made, and so far as we are able to discover, by competent persons and with reasonably certain results.

Against this test appellee seeks to show that much more steam was generated in the boilers than would be required to run the water works and give to the Electric Light Company more than 100-horse power, and in their brief, counsel for

appellee say: " It was not the fault of the appellee that the engine of the Electric Light Company did not receive more than 100-horse power of steam. It was so set that it would not receive any more steam, and therefore the proviso of the resolution was impossible of performance; and for that reason can it be said that appellee shall not be paid for the labor rendered by his son, which is proven is beneficial? Clearly not. Such a rule would be unjust and oppressive in the extreme."

We fail to see that either party was at fault. The question to be determined was not how much steam was generated, but how much power was furnished the Electric Light Company; that is, what quantity of steam was actually employed in propelling the works of the Electric Light Company.

We do not think the case was properly presented to the jury, and the judgment of the County Court will be reversed and the cause remanded.

*Reversed and remanded.*